## Burke Electric Company *v.* Pennsylvania Light and Power Company, Appellant.

*Contract—Sale—Parties—Corporation—Case for jury.*

In an action against a corporation for machinery sold and delivered, where the defendant alleges that the machinery was ordered by another corporation from which the defendant had bought it, the case is for the jury, where the evidence tends to show that, although no express contract was proven, the machinery was consigned to the defendant, and received by it, that, at the time, the two corporations had joint offices, that the same persons acted as officers for both companies, that the sign on the office indicated that it was solely the office of the defendant, that the existence of the other company was not known to the plaintiff at the time, that the defendant did not notify the plaintiff of any mistake, and that there had been other transactions between the plaintiff and defendant both prior to and subsequent to the delivery of the machinery in question.

*Evidence—Books of account—Books of common carriers.*

In an action between individuals for goods sold and delivered, the books of a common carrier may be received in evidence if they are verified on the stand by a superior officer of the carrier company, who knew them to be the books of regular entries kept in the course of business.

Argued April 28, 1915.    Appeal, No. 195, April T.,
1915, by defendant, from judgment of C. P. Allegheny
Co., April T., 1913, No. 1980, on verdict for plaintiff in
case of Burke Electric Company v. Pennsylvania Light
& Power Company.    Before RICE, P. J., ORLADY, HEAD,
HENDERSON, KEPHART and TREXLER, JJ.    Affirmed.

Assumpsit for machinery sold and delivered.    Before
CARNAHAN, J.

At the trial it appeared that the machinery had been
consigned by plaintiff from Erie, Pennsylvania, to the
defendant at Allegheny, Pennsylvania.    The defendant
claimed that the machinery had been bought by another
corporation named the Oil Recovery Company from
which the defendant had bought it for full value.

At the trial the court admitted in, evidence under ob-
jection and exception the books of the American Express
Company to show the shipment, after such books had
been verified by William N. Nearing, chief clerk of the
express company, and by other employees of the com-
pany.    (1-3)

Other facts appear by the opinion of the Superior
Court.

Verdict and judgment for plaintiff for $414.79.    De-
fendant appealed.

*Errors assigned,* among others, were (1-3) rulings on
evidence quoting the bill of exceptions and (11) answer
to plaintiff's second point, quoted in the opinion of the
Superior Court.

*Wm. A. Seifert,* of *Reed, Smith, Shaw & Beal,* for ap-
pellant.—There is absolutely no proof as to who made
the records of either the American Express Company,
Adams Express Company or the Pennsylvania Company,
and naturally there was no effort made to explain the
absence of the persons in whose handwritings they were:
Philadelphia Bank v. Officer's Executors, 12 S. & R. 48;

Ridgway v. Farmers Bank, 12 S. & R. 255; Pittsburgh Coal Co. v. Foster, 59 Pa. 365; Shrader v. United States Glass Co., 179 Pa. 623; Com. v. Hickey, 172 Pa. 39; Harkness v. Swissvale Borough, 238 Pa. 544; Broadrick v. Broadrick, 25 Pa. Superior Ct. 225.

*H. K. Siebeneck,* of *Seymour, Patterson & Siebeneck,* with him *Thomas A. Miller,* for appellee, cited: Keim v. Rush, 5 W. & S. 377; Laird v. Campbell, 100 Pa. 159.

OPINION BY ORLADY, J., October 25, 1915:

The plaintiff's claim was for payment of certain electrical machinery consigned by it from Erie, to the defendant at Allegheny, Pennsylvania.  The defense was that this defendant had not ordered the machinery, that it did not receive or use it, but that it had been ordered by another party, an Oil Recovery Company, which received it, and subsequently sold it to the defendant in this action, and that full payment had been made by this defendant to the Oil Recovery Company.

The defendant is a Pennsylvania, and the Oil Recovery Company an Arizona corporation doing business in this State.  When the machinery was delivered, the two corporations had joint offices, and the same persons acted as president, secretary, treasurer and superintendent of each.  The office sign exhibited to the public, indicated that the place was solely the office of the defendant, and the proof clearly shows that the existence of the Oil Recovery Company was not known to the plaintiff until the affidavit of defense was filed, at which time the officers of the defendant company had been changed, and the stock was held by different persons from what it had been when the machinery was shipped.

There was no evidence adduced to show an express contract, and the plaintiff's right to recover was based on the determination of the question of whether this defendant actually received the machinery and knowingly kept and used it.  This question was summarized in the

plaintiff's second point (11th assignment), "If the three generators and one sub-base were shipped to the defendant by the plaintiff, and defendant received the same from the railroad and express companies, thereby discharging the railroad and express companies from liability to the plaintiff, and if the defendant did not within a reasonable time notify plaintiff of the alleged mistake, then the defendant company was bound to pay for the same, whether it authorized the sending of the order or not" which was affirmed by the trial judge with the qualification, "provided the defendant knowingly received the machinery." The dispute was further complicated by the fact that the defendant admitted liability for the first item of charge consigned to it on November 29, 1907, of $30.07, but claimed as a set-off to that item a credit, as shown by a statement of plaintiff, of $99.43, which made a balance in its favor of $69.35. This course of business clearly indicated that there had been some business transactions between the parties as named in this action. Whatever of doubt there was as to the particular company receiving the machinery, was due to the manner of doing business by the defendant, through the name of another corporation, so closely associated with it as was the Oil Recovery Company, without a fair disclosure of its actual relation to it. The machinery was shipped in June and July, 1909, by railroad and express service, and bills for the same were mailed to the defendants within the same months, with notice on the bill "Terms net cash 30 days," and the trial was held September 18, 1914.

It is well known that with the volume of business transacted by common carriers it is practically impossible, after the lapse of years to produce all the books, clerks, salesmen, teamsters and the like, who have contributed by their service in a special transaction. The rule is fairly stated in 2 Wigmore on Evidence, Section 1530. In such a case it would be sufficient if the books verified on the stand by a superior officer who knew

them to be the books of regular entries kept in the establishment. It is conceded that the exhibits to which objections were made and overruled, were properly admitted for certain purposes "but not for the purposes gathered from the questions of counsel for plaintiff." The right to receive the evidence affected by the 1st, 2d, 3d, and 4th assignments did not depend on so narrow a rule as claimed by appellant. They were the original entry records made in the books of the plaintiff and duplicated in the bound volume of receipts issued by the carriers, by the persons in office charge of the defendant's business.

The main question—Did the defendant knowingly receive the machinery?—was purely one of fact, and that has been resolved, on sufficient evidence by the jury, against the defendant. The rule announced in Indiana Mfg. Co. v. Hayes, 155 Pa. 160, is applicable: "Conceding that the defendant did not order the goods in question, yet, when they arrived and he was notified that they were upon the car, it was his duty to notify the plaintiff of the alleged mistake. Instead of so doing, he took the property out of the possession of the railroad company and had it hauled to his own place of business. After having been fully informed of the shipment and consignment to him, he sent a check to the plaintiff company for other merchandise purchased of it, without any reference to the goods in controversy. The case was submitted to the jury under proper instructions. As stated by the trial judge to the jury, "There is evidence given orally by one or more witnesses on behalf of the plaintiff company that there were dealings between these parties prior and subsequent to these transactions, and it is admitted by the defendant company that there was such dealing." See also Farley v. Kline, 9 Pa. Superior Ct. 562.

The case was fairly tried and we find no reversible error in the record.

The judgment is affirmed.